IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE | : |
|     Plaintiff | : |
| v. | :  CIVIL ACTION NO: 18-cv-2044 |
| SAINT JOSEPH'S UNIVERSITY | : |
| And | : |
| JANE ROE | : |
|     Defendants | : |

**REPLY OF JOHN DOE TO JANE ROE'S SUR REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGEMENT**

**I.    INTRODUCTION**

First, Defendant Roe in her Sur Reply does not dispute that in the second part of her deposition completed on September 7, 2018, she corrected the dates of three photos (one of which clearly shows her neck without a bruise) as "after photos" (Exhibit 13, P292-294; P315-16) of her encounter with Doe. At her first deposition on July 9, 2018, Roe testified that the same three photos were part of a group of photos (Exhibit 13, P172, L 20, P175, L 15) showing her neck "before" her encounter with Doe. It was Roe's testimony on September 7, 2018, correcting the date of those photos that necessitated the supplemental report of Robert Sing,

D.O., dated September 24, 2018, (Exhibit 22) the content of which, standing alone, creates an issue of fact as to whether Roe made false claims about Doe, either knowingly and/or recklessly. Out of an abundance of caution, plaintiff had the images analyzed, as will be addressed below, to confirm whether Roe's new testimony was in fact accurate as the "bruises" were critical to the findings of the investigator that John Doe was responsible for sexual assault. Second, plaintiff will address Roe's misstatement of the law as it pertains to absolute privilege and address the defense of "common interest", a conditional privilege which Roe has raised for the first time in her Sur Reply.

## II. LEGAL DISCUSSION

### A. ON SEPTEMBER 7, 2018, ROE CORRECTLY DATED PHOTOS WHICH PROVE THE BRUISES ON HER NECK WERE NOT FROM DOE

Roe falsely charged Doe with sexually assaulting her when they were together in the early morning hours (2:30 a.m.) of Saturday February 24, 2018. When she later described the incident to SJU officials in the afternoon on Monday February 26, she told them it lasted 30-40 seconds, during which she could not breath and speak, and showed multiple SJU officials bruises on her neck she said were from Doe's attack. (Exhibit 18, P156-7)

It is now clear that the bruises could not have been caused by Doe because the photo of Roe's neck the next day shows no bruising, no redness, no swelling, no injury of any kind. (Exhibit 13 J.R. P292, L24-P294, L13; P315, L16-P316, L2).



Exhibit 14 (P1)

Attached is the affidavit of Ernest Tedesco (Exhibit 24) who was able to analyze the digital trail of the image which confirms it was created February 24th at 10:00 p.m., 20 hours after Roe's encounter with Doe.

Two days later, on Monday, February 26, 2018, Roe told Bean that Doe had choked her and showed Bean bruises on her neck (photograph below) that she attributed to Doe's allegedly suddenly violent attack. The digital trail of the below photo confirms it was created after Roe's meeting with SJU officials on Monday February 26, in the afternoon. See certification of Ernest Tedesco (Exhibit 24).

3



Exhibit 14 (P7)(arrows added).

In her depositions Roe explained that it was these bruises that prompted her to report the assault.

Roe testified at her deposition:

```
1.   Q.    Okay.  So because you didn't
2        know John Doe you didn't like that he put his
3        hand on your neck?
4    A.    And I never -- no one has ever
5        left bruises before.
6    Q.    Okay.  Anything else?
7    A.    No.
```

| | | |
|---|---|---|
| 8 | Q. | Are there situations when you |
| 9 | | do like having someone's hand around your |
| 10 | | neck? |
| 11 | A. | Yes. |

See Exhibit 13 (P263, L1-11).

| | | |
|---|---|---|
| 12. | Q. | Now, what did you tell Ms. |
| 13. | | Perry? |
| 14. | A. | I told her that I went home |
| 15. | | with a guy on Friday night and like everything |
| 16. | | seemed fine at first, but then like the next |
| 17. | | thing I knew his hand was around my neck and i |
| 18. | | couldn't breathe and *now there's like bruises* |
| 19. | | *on my neck*, and I don't know what to do about |
| 20. | | it. |

See Exhibit 13 (P211, L 12-20)(emphasis added).

At the suggestion of SJU officials, Roe took photographs of the bruises on her neck that she later gave to SJU's outside investigator. SJU's investigator found Doe responsible for sexual assault and specifically noted the bruises as critical evidence that Doe did not have Roe's consent.

FINDINGS OF FACT

. . .

11. Although I find that Mr. ▬▬▬ squeezed Ms. ▬▬▬ neck area, *and it left bruises*, I do not find that he did it with the intention to hurt her.

RATIONALE

. . .

> Consent to kissing also understandably includes some contact by Mr. ███ hands on the neck and throat area. However, because Ms. ███ complaint is that Mr. ███ squeezed her neck, ***to the point where it left bruises***, I find that this is a singular, separate act which required her consent. This analysis of consent is totally dependent on the circumstances presented her.

See Exhibit 23 (SJ0275-76)(emphasis added).

For Roe to now argue that it does not matter if the bruises were caused by Doe in determining if there are material issues of fact that preclude Summary Judgment in connection with Doe's cause of action for defamation flies in the face of common sense.

### B. ROE'S STATEMENTS ARE NOT PRIVILEGED

Roe's legal argument of absolute privilege, as will be discussed below, simply misstates the applicable law. As to conditional privilege, in Pennsylvania a defendant asserting a privilege defense has the burden of proof. Roe has not even attempted to meet that burden in connection with her newly raised defense of a "common interest" conditional privilege.

### B(1). ABSOLUTE PRIVILEGE

The Third Circuit has never treated private, non-governmental proceedings as quasi-judicial. This has not changed since the Third Circuit's 2005 decision quoted, infra, in *Overall*. As stated by the Third Circuit:

> [O]ur research reveals that under Pennsylvania law government involvement is also a necessary condition for according quasi-judicial status to grievance procedures.
>
> We have not found a single Pennsylvania case according quasi-judicial status to entirely private hearings. Rather, Pennsylvania cases finding quasi-judicial privilege consistently involve proceedings [**11] before federal, state, or local governmental bodies, or proceedings held pursuant to a statute or administrative regulation. Milliner is instructive on this point. In a lengthy footnote, the Pennsylvania Superior Court cites - apparently with approval - no fewer than 13 cases discussing quasi-judicial entities. Without exception, each involves a grievance proceeding before a government entity or an ostensibly private entity operating pursuant to a state or federal statute. ... Implicit in this

rule is [*498] the assumption that the "judicial officer" [**13] must be a public official.

*Overall v. Univ. of Pa.*, 412 F.3d 492, 2005 U.S. App. LEXIS 12710, 151 Lab. Cas. (CCH) P60,038, 23 I.E.R. Cas. (BNA) 130. *Accord Schanne v. Addis*, 632 Pa. 545, 121 A.3d 942, 2015 Pa. LEXIS 1780 (2015)

Roe argues that plaintiff ignores the "precedent of *Dempsey v. Bucknell University,* 76 F. Supp, 3d. 565 (MD PA 2015) cited in Movants' brief, in which a quasi-judicial absolute privilege was held to apply in a situation involving a private university grievance procedure." The Court in *Dempsey* did not apply a quasi-judicial absolute privilege to a private university grievance procedure. The *Dempsey* Court applied the privilege to the allegedly defamatory communications made by a lawyer for the victim pertinent to a "judicial proceeding". " Given the existence of this attorney-client relationship, it is this Court's determination that the letters [**34] and emails authored by Defendant *Voci* to University officials were in fact afforded an absolute privilege from a claim of defamation as communications pertinent to a judicial proceeding and made in furtherance of the client's interests." Id. at 582 (emphasis added).

### B(2). COMMON INTEREST PRIVILEGE

Roe argues for the first time in her Sur Reply to plaintiff's brief that if she is not entitled to Summary Judgement based upon absolute privilege, without any real discussion or citation to authority, she should be granted Summary Judgment on the grounds that her defamatory comments were protected by the conditional privilege of "common interest". The common interest privilege arises most often in employment relationships, partnerships, and family held businesses. It is far from clear that Roe, as a student (rather than say a faculty member) and SJU share a common interest as it has been interpreted under Pennsylvania law. But like absolute privilege, Roe has the burden of establishing all of the elements necessary to implicate the

privilege which she has manifestly failed to do. It is Roe's burden to establish that her communications were "made on a proper occasion, from a proper motive, and in a proper manner," *Maier v. Maretti*, 448 Pa. Super. 276, 671 A.2d 701, 706 (Pa. Super. Ct. 1995).

Even if this Court would so rule, a conditional privilege as a defense is rendered inapplicable, if the publication (1) is actuated by malice or negligence; (2) is made for a purpose other than that for which the privilege is given; (3) is made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or (4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. See *Elia v. Erie Ins. Exch.*, 430 Pa. Super. 384, 634 A.2d 657, 661 (Pa. Super. Ct. 1993). In this context, malice requires only a showing "that the defendant made the defamatory communication intentionally, knowing that it was false, recklessly, without regard to whether it was true or false, … or that the defendant made a false statement without using reasonable care to determine the truth." *Bargerstock*, 580 A.2d at 364, citing Pennsylvania Selected (sic.) Jury Instructions (Civil), §13.09 Defamation: Defense of Privilege (1980).

First, there is more than ample evidence of record to establish an issue of fact as to whether Roe intentionally or recklessly made a false statement about the alleged attack which were addressed at length in plaintiff's Brief in Opposition and the reports of Robert Sing, D.O. (Exhibit 22). Second, there are issues of fact as to whether Roe made defamatory statements about Doe to inoculate herself from the consequences of potential school disciplinary sanctions for her own conduct since she was already on probation and may have been expelled. (Exhibit 13, P255) Third, there is no dispute that Roe's defamatory statements about Doe were "published", to numerous other students thereby abusing the privilege. Abuse of a conditional privilege is indicated when to [a] person not reasonably believed to be necessary for the

8

accomplishment of the purpose of the privilege, or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. *Simms v. Exeter Architectural Products.*, 916 F. Supp. at 432, 1996 U.S. Dist. Dist. Lexis 6321 (Middle Dist. Of Pa 1996) (citing *Johnson v. Res. for Human Dev., Inc.*, 860 F. Supp. 218, 223 (E.D. Pa. 1994); *Agriss*, 483 A.2d at 463).

Finally, while the existence of a conditional privilege is a question of law, the possible abuse of the privilege is always a question of fact. *Simms*, 916 F. Supp. at 436 (quoting *Beckman v. Dunn*, 276 Pa. Super. 527, 419 A.2d 583, 588 (Pa. Super. Ct. 1980) (internal citations and footnote omitted)). The decision on whether the privilege has been abused is left to the jury. See *Agriss v. Roadway Express, Inc.,* 334 Pa. Super. 295, 483 A.2d 456, 463 (Pa. Super. 1984) ("It is . . . a question of fact for the jury whether a privilege has been abused, Pennsylvania requires showing only negligence, *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 592 Pa. 66, 923 A.2d 389, 398-99 (Pa. 2007) .

### III. CONCLUSION

For the reasons set forth above, Defendant Roe's Motion for Summary Judgment should be denied.

Respectfully submitted,

Dated: October 25, 2018      BY:    */s/ John Mirabella*
                                                          John Mirabella, Esquire
                                                          john@mirabellalawfirm.com
                                                          Law Offices of John Mirabella
                                                          1600 Market Street, Suite 1810
                                                          Philadelphia, PA 19103
                                                          (215) 422-4991